**Genave ROGERS, sole devisee under the will of Leslie Rogers, deceased, Plaintiff/Appellant,**

v.

**HESTON OIL COMPANY, an Oklahoma Corporation, and Marsh Oil and Gas Company, an Oklahoma corporation, Defendants/Appellees.**

No. 58967.

Supreme Court of Oklahoma.

Oct. 16, 1984.

Rehearing Denied June 24, 1986.

G. Dale Elsener, Roberts & Elsener, Wewoka, for plaintiff/appellant.

Sneed, Lang, Adams, Hamilton, Downie & Barnett by James C. Lang and Brian S. Gaskill, Tulsa, and William Bishop, Seminole, for defendants/appellees.

LAVENDER, Justice:

Appeal from trial court's order granting summary judgment in favor of defendants below, lessees of an oil and gas lease and against plaintiff below, lessor in lessor's action for damages arising out of alleged breach of an implied covenant to protect against drainage by lessees' producing well in proximity to lessor's leased land.

The Court of Appeals affirmed the lower court's judgment, holding that *Carter Oil Co. v. Samuels*, 181 Okl. 218, 73 P.2d 453 (1937) is determinative. We granted certiorari. We now direct that the opinion of the Court of Appeals be withdrawn, and reverse.

On July 8, 1977, plaintiff executed an oil and gas lease on a 280 acre tract in Seminole County (plaintiff's tract) which lease was assigned to defendants. The lease was for a primary term of three years "and as long thereafter as oil or gas, or either of them is produced from said land by the lessee."

The lease further provides in pertinent part:

"If drilling operations or mining operations are not commenced on the leased premises on or before one year from this date, this lease shall then terminate as to both parties unless Lessee on or before the expiration of said period shall pay or tender to Lessor, or to the credit of Lessor in The First National Bank & Trust Company of Tulsa, at Tulsa, Oklahoma or any successor bank, the sum of Two Hundred Eighty and No/100 Dollars ($280.00), hereinafter called 'rental' which shall extend for twelve months the time within which drilling operations or mining operations may be commenced. Thereafter, annually, in like manner and upon like payments or tenders the commencement of drilling operations or mining operations may be further deferred for periods of twelve months, each during the primary term. Payment or tender of rental may be made by check or draft of Lessee delivered or mailed to the authorized depository bank or Lessor (at address last known) on or before such date of payment, and the payment or tender will be deemed made when the check or draft is so delivered or mailed. * * *

"Should the first well drilled on the above described land, or on acerage pooled therewith, be a dry hole, then, and in that event, if a second well is not commenced or said land, or on acerage pooled therewith, within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration said twelve months shall resume the payments of rentals, in the same amount and in the same manner as

hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals as above provided, that the provisions hereof governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments. * * *"

There was no pooling of the lease on plaintiff's tract with other leases owned by defendants adjoining or adjacent thereto.

It is undisputed that the following sequential events occurred thereafter:

In March, 1978, defendants completed the S & M well on their adjacent lease, 330' from plaintiff's tract. This well produced 26,000 bbls. of oil during the first ten months of operation.

On June 8, 1978, defendants made a delay rental payment to plaintiff, which was accepted.

In October, 1978, defendants drilled a dry hole, the Morgan well, on plaintiff's tract, two locations away from the S & M well.

In March, 1979, plaintiff made written demand that defendants drill a protection well or that they pay her off-set royalty by reason of the production from the S & M well, and wrote a similar letter to defendants on June 6, 1979.

On or about June 1, 1979, defendants deposited to plaintiff's account in the designated bank a draft as delay rental payment for the period July 8, 1979 to July 8, 1980, which draft was credited to plaintiff's account on or about June 8, 1979.

On October 5, 1979, plaintiff filed the present suit against defendants, seeking actual and punitive damages by reason of defendants' alleged breach of an implied covenant to drill a protective well against drainage by the S & M well from plaintiff's tract.

On July 15, 1982, the trial court granted defendants' Motion for Summary Judgment, from which order, this appeal was lodged.

## I.

■ It is clear from the provisions of the lease above quoted, that the October, 1978 drilling of the Morgan well, a dry hole, was the equivalent of the payment of delay rentals for the period July 8, 1979 to July 8, 1980, and no additional delay rentals would be due until July 8, 1980.

Plaintiff contends that the defendants' delay rental payment in June, 1979 was a nullity and had no effect upon the rights of the parties.

Defendants contend that the payment was made as and for a delay rental, was made and accepted within the terms of the lease, and that acceptance of the same by plaintiff with knowledge that oil or gas was then being drained from her premises constitutes a waiver of any right she had to damages for such drainage during the time covered by the delay rental payment.

Plaintiff counters with the assertion that this case is distinguishable from *Carter Oil Co. v. Samuels,* supra, and, in any event, that the *Carter* opinion should be overruled.

*Carter* holds, (Syllabus by the Court):

"1. Where the lessor accepts the payment of delay rentals, with knowledge that oil or gas is being drained from his premises at the time the payment is made, he waives his right to recover damages for such drainage during the time covered by such payment.

"2. Where it is stipulated in an oil and gas lease that the lessee may make payment of delay rentals by deposit in a specified bank to the credit of the lessor, it is implied that payment is accepted when the deposit is made pursuant to the stipulation, and if the lessor does not wish to accept the delay rentals it is his duty to give notice to the lessee, before the rental becomes due, that it will not be accepted.

"3. Where it is uncontradicted that the lessee has made payment of delay rentals by deposit in the designated bank to the credit of the lessor, and the lessor has given no notice to the lessee of his refusal to accept such payment, *held,* his testimony that he did not 'accept' delay

rentals is not competent evidence reasonably tending to support a judgment in his favor on that issue."

*Carter* is distinguishable from the case at bar in that the delay rental payment of June 1979, in the case at bar was not then due, and was for a specified period of one year, during which no delay rental payments were due. In *Carter,* the delay rental payment was due when paid.

In *Atlas Life Ins. Co. v. Schrimsher,* 179 Okl. 643, 66 P.2d 945 (948) (1937), we said:

"Although the definitions of waiver are myriad and conflicting, it may be said with certainty that in order to constitute a waiver, there must be an actual intention to relinquish a known right, either expressly, or by such conduct as warrants an inference of such relinquishment ... The most rudimentary essential of a waiver is that the waiving party shall in some manner publish his intention to relinquish his rights, either by words or conduct. As stated in 67 Corpus Juris, 294, 'waiver' 'is a doctrine, resting upon an equitable principle, which courts of law will recognize, that a person with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another.'"

And in 28 Am.Jur.2d Estoppel and Waiver, § 157, it is said:

"The term 'waiver' implies a choice or an election to dispense with something of present value or to forgo some present advantage. Therefore, to constitute a waiver, the right or privilege claimed to have been waived must generally have been in existence at the time of the purported waiver. A person cannot waive a right before he is in a position to assert it."

A waiver operates in praesenti; if it is intended to operate in futuro it is merely an agreement to waive. (Id., footnote 1.)

In the case at bar, the defendants had no right under the lease agreement to make the delay rental payment of June, 1979 to the plaintiff, and thereby delay the drilling of a subsequent well on plaintiff's tract, and the plaintiff had no contractural right to demand or receive the same. Under the terms of the lease, the drilling of the dry hole superseded the necessity for and the right to delay further drilling during the period the purported delay rental purportedly covered. Therefore, if the plaintiff "accepted" the payment (an issue we need not here decide) no waiver is attributable to plaintiff, because the plaintiff simply did not have a right to be waived. And to assert that the unilateral payment by defendants to plaintiff, hereby, by implication, constituted a waiver of an implied covenant to protect against drainage which was entirely collateral to the "delay rental" clause of the lease is to state the absurd.

Supported by profuse annotations, the textwriter in 28 Am.Jur.2d Estoppel and Waiver, § 158 states:

"It must generally be shown by the party claiming a waiver that the person against whom the waiver is asserted had at the time knowledge, actual or constructive of the existence of his rights or of all the material facts upon which they depend. No man can be bound by a waiver of his rights unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive; and the fact that he knows his rights and intends to waive them must plainly appear."

## II.

We next consider whether an oil and gas lessor, by accepting payment of delay rentals, even if timely made in accordance with the terms of the lease contract, with knowledge on the part of the lessor that oil or gas is being drained from his premises at the time that payment is made, thereby waives his right to recover damages for such drainage during the time covered by the delay rental payment. Upon further consideration of our holding in *Carter Oil Co. v. Samuels,* supra, we now conclude that *Carter* should be overruled, and that payment and acceptance of delay rental under the terms of the lease does not in and of itself constitute a waiver of an implied covenant on the part of the lessee to protect the lessor from drainage.

An implied covenant to protect the leased premises from drainage by surrounding wells is a covenant implied in fact to carry out what the parties must have intended which the courts read into the lease as an integral part thereof. Such a covenant becomes a part of the lease only where its inclusion in the lease is not inconsistent with other terms of the lease. It is not a covenant implied in law, and in the absence of a statute on the subject, it does not arise out of public policy. Once invoked, it is a continuing covenant for the duration of the lease. *Indian Territory Illuminating Oil Co. v. Rosamond*, 190 Okl. 46, 120 P.2d 349, 353–354, 138 A.L.R. 246 (1941).

By the terms of the covenant thus implied, the lessee has a duty to protect the land from drainage by adjoining wells so long as the drilling of a protection well or wells will, in the judgment of a reasonably prudent operator, be a profitable undertaking, [*Indian Territory Illuminating Oil Co. v. Rosamond*, supra 120 P.2d at 352] having due regard for the interests of both lessor and lessee.

The next question is whether the implied covenant of protection against drainage, thus included within the lease agreement, is a separate and independent covenant from the delay rental covenant, so that the payment and acceptance of delay rentals under the written terms of the lease by the lessor with knowledge of drainage by adjacent or adjoining producing leases in and of itself constitutes a waiver of the implied covenant.

The "unless" clause of the lease relates to the contractual obligation of the lessee to *develop* the lease. The implied covenant to protect against drainage relates to an entirely separate subject, the obligation of the lessee to protect against *drainage*. Each is a separate clause, relating to a different subject matter. We see no basis in reason or logic to construe the implied covenant as an imposed modification upon the development clause, particularly where it has been established that the implied covenant may only be imposed where it is not inconsistent with other provisions of the lease. In the early case of *Eastern Oil Co. v. Beatty*, 71 Okl. 275, 177 P. 104 (1918), we first determined that during the period of the lease when the "unless" clause was operative, the payment of delay rentals under the "unless" clause delayed the lessee's obligation to protect against drainage in the same manner and to the same extent as it delayed the lessee's obligation to develop. This holding was the basis for our determination in *Carter Oil Co. v. Samuels*, supra. We now believe, and hold, that the two clauses are separate and distinct, and that neither is a modification of the other, and that *Eastern* and *Carter* and the cases subsequently likewise so holding should be and are overruled.

Our conclusion is further fortified by what we perceive to be a fundamental injustice which may arise were we to treat the two clauses as interdependent. In the case at bar, the defendant lessee owns the lease upon plaintiff lessor's tract, *and* upon adjacent and adjoining leases, including the one on which drainage is alleged to exist of plaintiff's tract. The obsequious application of the "prudent operator" rule merely permits the lessee to continue to drain the lessor's tract with impunity by timely payment of delay rentals. No "prudent operator" would drill a well to prevent drainage, when his existing wells will draw the oil from the lessor's tract without his incurring the expense of a well to prevent such drainage, for the sole benefit of the lessor.

The views herein expressed are consistent with those expressed in *Renner v. Monsanto Chemical Company*, 187 Kan. 158, 354 P.2d 326 (1960), wherein the Supreme Court of Kansas said (354 P.2d at 334):

"While the early cases of this court indicate that the implied covenant to protect against drainage was intertwined and indistinguishable from the covenant to fully develop (citations omitted.) it is now well established that the duty to protect against drainage is an independent covenant. (Citations omitted.)

"Generally speaking, the rule of the implied covenants to drill additional wells after discovery and to protect the premises against drainage by wells on adjoining

leases is this: under the former, when oil in paying quantities becomes apparent and the number of wells to be drilled on the lease is not specified, there is an implied obligation that the lessee continue development of the property and put down as many wells as may be reasonably necessary to secure the oil for the common advantage of both the lessor and the lessee. (Citations omitted.) Under the latter, because of the fluidity of oil and the likelihood of its being withdrawn from the leased premises by the operation of wells on adjoining lands, a rigid duty is imposed upon the lessee to protect the premises from substantial drainage by drilling a sufficient number of wells at points the same distance from the lease boundary lines as are the wells on adjoining lands. (Citations omitted.) Whether the lessee has performed his duties under the implied covenants is a question of fact. In the absence of a controlling stipulation, neither the lessor nor the lessee is the sole arbiter of the extent to which, or the diligence with which, the operations shall proceed. The standard by which both are bound is what an experienced operator of ordinary prudence would do under the same or similar circumstances, having due regard for the interests of both. (Citations omitted)."

We therefore hold that acceptance of delay rentals, even if timely made in accordance with the development clause of an oil and gas lease, with knowledge on the part of the lessor that oil or gas is being drained from lessor's premises at the time the payment is made, does not in and of itself constitute a waiver of lessor's right to recover damages for such drainage arising out of an implied covenant to protect against drainage.

### III.

We further hold that where the lessee is the owner of an adjoining lease which is draining the lessor's tract, the "prudent operator" rule applicable to the lessee's implied covenant to protect against drainage is whether the lessee as a prudent operator would drill a protection well on the lessor's tract *if the draining lease were owned by a third party, and not the lessee.*

In *Dixon v. Anadarko Production Company,* Okl., 505 P.2d 1394 (1973), we said (1396): "It inheres in the prudent operator rule that, where, as here, the lessee is draining his lessors' land, he will make studies and keep abreast of the available information to determine when, or if, further drilling would be profitable and prudent."

In *Denker v. Mid-Continent Petroleum Corp.,* (C.A. 10th Cir.1932) 56 F.2d 725, 84 A.L.R. 756, in construing Oklahoma law, the Court said:

"In order to comply with the implied covenants of a lease to drill offset wells and to diligently develop the lease, a lessee must do that which, under the circumstances, an operator of ordinary prudence, having regard to the interests of both lessor and lessee, would do." (Citations omitted).

The Arkansas Supreme Court held in the case of *Blair v. Clear Creek Oil & Gas Co.,* 148 Ark. 301, 230 S.W. 286, 19 A.L.R. 430, 434 (1921): "The practical test is to be found in the question: Are the outside wells, as, for example, the wells on the Greig and Bryant tracts, draining the Blair land to such an extent that, if the wells on the Greig and Bryant tracts were operated by a third party, appellee, as lessee of the Blair tract, would find it good management to put down protection wells to save its own leased territory from exhaustion? If so, then good faith to its lessors would require it to put down the protection wells, that the lessors might get their royalties under the lease, or at least be protected from having the gas drawn from their lands." In the A.L.R. annotation following *Blair,* the textwriter summarizes the rule as follows (443):

"The foregoing rule requiring the lessor to show in effect that as an ordinary business proposition common prudence requires the lessee to drill offset wells has been applied in cases where the wells upon adjoining premises are operated by

a stranger to the lease. If such wells are operated by the lessee, it would seem clear that, at least, he would be required to account to the lessor for the latter's share of the oil secured through the adjoining wells.

"The courts are agreed that a duty rests upon the lessee in an oil and gas lease to protect the lines of the premises from drainage by wells located on adjoining premises. But this duty does not impose upon the lessee the burden of protecting the lines of the leased premises under any and all circumstances. He is not required to do what the lessor, acting on his own behalf, would find it unprofitable to do. And his judgment in the matter will be given proper weight by the court in determining the question as to whether or not additional wells are necessary and should be required." (See also 60 A.L.R. 953, et seq.)

The foregoing rules are more recently summarized in 38 Am.Jur.2d Gas and Oil, § 126 in the following language:

"With respect to the implied covenant to protect the leasehold against drainage, the law requires the lessee to do no more than would be done by a prudent operator acting under the same circumstances. It has been observed that since there is no relation of special trust or confidence between the lessor and lessee in a gas and oil lease any more than there is in any other type of lease, a court of equity should not interfere in the determination of the necessity and propriety of sinking a well to prevent drainage, where that question is one of business judgment and management. This view has been supported on the ground that the lessee should not be required to work unprofitably to himself for the profit of his lessor. Accordingly, it has been held that the lessee is not required to sink wells to offset drainage from wells on adjoining premises where the production from the wells on those premises is slight and it appears that those wells will never return the cost of drilling.

"Although, in general, a lessee of adjoining lease-holds is entitled to any incidental advantage arising from their proximity, it has been held that he has no implied right to use the wells on one tract in order to drain the other, and that on a showing that protective action would be called for if the more developed leasehold were being operated by a third person, he may properly be required to drill such number of offset wells as may be found to be necessary under the circumstances."

The order of the trial court granting summary judgment in favor of defendants/appellees is reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

HODGES, DOOLIN, WILSON and KAUGER, JJ., concur.

BARNES, C.J., SIMMS, V.C.J., and OPALA, J., concur in part; dissent in part.