Robert E. LECK, Johnnie V. Steele and
Kenneth E. Brandt,
Appellants/Plaintiffs,

v.

CONTINENTAL OIL COMPANY,
Appellee/Defendant.

No. 72054.

Supreme Court of Oklahoma.

Nov. 28, 1989.

Rehearing Denied Nov. 6, 1990.

John T. Edwards and Henry J. Hood, Monnet, Hayes, Bullis, Thompson and Edwards, Oklahoma City, for appellants/plaintiffs.

S. Paul Hammons, Andrews, Davis, Legg, Bixler, Milsten and Murrah, Oklahoma City, for appellee/defendant.

SIMMS, Justice:

Certified Question of Law from the United States Court of Appeals for the Tenth Circuit.

The appellants are mineral rights owners in Section 21, T13 N, R10 W, Canadian County, Oklahoma. This section was spaced for 640–acre drilling and spacing units for the Atoka–Morrow formation along with the adjacent Section 20, T13 N, R10 W, Canadian County in 1967 pursuant to Order No. 66858 of the Oklahoma Corporation Commission (commission). In 1972, the sections were pooled and the leasehold interests in the minerals were adjudicated with appellee being designated the operator in both units.

Appellee drilled a well in Section 21, calling it the Leck # 1 well, and production commenced in May of 1973. In 1975, appellee drilled a well in the Northeast Quarter of Section 20 and plugged it because it was not sufficiently productive. They again drilled in Section 20, this time in the West Half, only to find a dry hole. Appellee then filed an application with the commission for a location exception to drill a well in Section 20, 1310 feet north of the south line and 330 feet west of the east line. After proper notice was given, the commission held a hearing, no opposition came forth, and the commission granted the application in Order No. 119476. Ap-

pellees were granted a normal production allowable for this off-pattern well.

Appellees drilled the well, designating it the Wosika # 1 well, and production commenced in July of 1976. On September 26, 1978, Robert Leck, an appellant herein, filed an application with the commission seeking an order restricting the allowable on the Wosika # 1 well "in order to protect the correlative rights of all parties in the common source of supply." The commission heard the application en banc on January 22, 1979 and entered Order No. 156636 on August 20, 1979 denying the application. No application to reconsider was filed with the commission nor was an appeal of the order lodged with the Oklahoma Supreme Court, and the order became final thirty days after being entered.

On October 23, 1985, appellants filed this action in Canadian County District Court alleging the appellee breached an implied covenant to prevent drainage, breached a fiduciary duty to protect the appellant's correlative rights by drilling and operating the Wosika # 1 well, and made misrepresentations to the commission in order to secure the location exception. The appellants asked for actual damages and punitive damages.

Appellees removed the action to the United States District Court for the Western District of Oklahoma and sought summary judgment arguing that the action was a collateral attack on the Oklahoma Corporation Commission's final order, Order No. 156636. The Honorable Thomas R. Brett, United States District Judge, ruled that the district court had no subject matter jurisdiction over the action and dismissed the case. Appellants appealed to the United States Court of Appeals for the Tenth Circuit, which has now certified the following question of law pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1981, §§ 1601, et seq:

"Does the district court have subject matter jurisdiction to hear and decide an action for damages brought by mineral interest owners against the owner and operator of an oil and gas lease when the mineral interest owners allege: (1)

breach of contract by the operator for causing drainage of the oil and gas under their property by another oil and gas well on adjacent property operated by the operator; (2) violation of fiduciary duties by the operator for failing to protect their correlative rights; and (3) misrepresentations by the operator to the Oklahoma Corporation Commission during a hearing on the application of the mineral interest owners to restrict the allowable production from the other oil and gas well?"

We hold that subject matter jurisdiction rests solely with the district court to determine private rights in mineral interests and oil and gas leaseholds, and therefore, the district court was the proper forum to hear the action based on the private rights that the appellants assert. We also hold that the district court does not have subject matter jurisdiction over the third cause of action, the misrepresentation claim, because we find that the appellants' allegations are in the nature of intrinsic fraud for which relief, if any, must be sought in the forum where the fraud allegedly occurred.

## I.

### BREACH OF CONTRACT FOR CAUSING DRAINAGE

■ Article 7, § 7 of Oklahoma's Constitution provides that "the District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article, and such powers of review of administrative action as may be provided by statute." Title 52, O.S.Supp. 1988, § 87.1, defines the Commission's authority relative to a common source of supply and well spacing and drilling units. However, we have construed this statute to vest jurisdiction of *public right* disputes in

the commission, whereas, disputes over *private rights* are properly brought in the district court.[1] In other words, the commission's jurisdiction is limited to protection of public rights in development and production of oil and gas.[2]

Clearly, the correlative rights of all mineral rights owners in the common source of supply for the subject unit fall within the parameters of public rights when a unitization order, pooling order, or order setting the allowables on the unit's well were concerned. Thus, when the appellants applied for an order to restrict the allowable on the Wosika # 1 well "in order to protect the correlative rights of all parties to the common source of supply," they properly brought the application before the commission.

■ However, when a dispute arises between a lessor and a lessee regarding the lessee's breach of an implied covenant, the rights involved enter the realm of the private world and are proper disputes for the district court to resolve because they involve issues concerning the construction of a private contract between the parties.[3] Therefore, the appellants' action for damages for the lessee's alleged breach of an implied covenant to protect from drainage is a private action arising from their contract and does not involve the correlative rights of the "public."

Each of the authorities cited in footnote 1 for the proposition that the commission has jurisdiction to hear only public rights disputes involved actions on joint operating agreements or disputes concerning a pooling order's effect. This case concerns an action brought on the lease agreement entered into by the parties pertaining to the oil and gas under the appellants' land. We have held that when an oil and gas compa-

1. *Leede Oil & Gas v. Corporation Commission,* Okl., 747 P.2d 294 (1987); *Samson Resources Co. v. Corporation Commission and TXO Production Corp.,* Okl., 742 P.2d 1114 (1987); *Nilsen v. Ports of Call Oil Co.,* Okl., 711 P.2d 98 (1985); *MM Resources, Inc. v. Huston,* Okl., 710 P.2d 763 (1985); *Samson Resources Co. v. Corporation Commission,* Okl., 702 P.2d 19 (1985); and *Tenneco Oil Co. v. El Paso Natural Gas Co.,* Okl., 687 P.2d 1049 (1984).

2. *Nilsen,* 711 P.2d at 103; *Samson,* 702 P.2d at 21; *Tenneco,* 687 P.2d at 1052.

3. *Samson Resources v. Corporation Commission and TXO Production Corp.,* Okl., 742 P.2d 1114, 1116 (1987).

ny enters into a lease with mineral rights owners to extract oil or gas from the owners' lands, the company (lessee) impliedly covenants to protect the lessors' land from drainage of the minerals from under their land caused by wells on adjoining lands.[4] In order to protect the lessor's land from this drainage, we have required the lessee to drill a well and produce the minerals on the lessor's land to offset the draining well.[5] Moreover, we also have allowed lessors to bring an action for damages they have received due to their hydrocarbons being drained by adjacent wells where the lessee failed to drill an offset well to protect the lessor from drainage.[6] Despite the many actions brought against lessees for their failure to protect the lessor from drainage, we have only determined two cases which involve a situation similar to the one at bar.

In *Morriss v. Barton*, 200 Okl. 4, 190 P.2d 451 (1947), we stated in the second syllabus by the Court that:

> "[the] [l]essee of an oil and gas lease, who owns adjoining land, may not operate wells on his own land, contrary to [the] duty devolved upon him as lessee, so as to materially reduce or effectively destroy production from wells on the leased land."

On 190 P.2d at page 457 of the text, we recognized that the lessee had a duty to proceed with due care and that failure to do so may be more than just a breach of the contract (lease), but could amount to a tortious act. The fact that the lessee owned one of the tracts which were draining the plaintiff's land was not determinative to our holding. What mattered was that the defendant, as lessee, owed his lessor a duty not to materially reduce the production of the plaintiff's well by increasing production on an adjacent well and by failing to exercise due care in operating the well on plaintiff's land. Granted, in the case at bar, the appellants do not allege that the lessee acted without due care in operating the well on their land. However, this distinction is not fatal in light of other cases which support their damage claims.

In *Hall Jones Oil Co. v. Claro*, Okl., 459 P.2d 858 (1969), we alluded to the potential problem that might arise where a lessee has adjoining leases and operates wells on both leases with one lessor claiming that his land is being drained by the increased production on the adjacent land. In this case, several mineral interest owners brought a class action suit to recover damages for the hydrocarbons drained from their land by wells on adjacent lands also operated by their lessee. The lessors maintained that the lessee tortiously and willingly breached its implied covenant to protect them from drainage by producing oil from a well on an adjacent tract of land upon which lessees also had a leasehold interest. In discussing the lessee's improper drainage of the lessors' lands, we stated at page 863:

> "Professor Merrill in Covenants Implied in Oil and Gas Leases, 2d Edition (1940) Section 111, pp. 259 and 260, in referring to fraudulent drainage said:
>
> ' * * * no doubt if the lessee owns the fee, or royalty interest, in the adjoining land and operates thereon to draw oil or gas from beneath the leased premises because he will get a larger share, at the same time blocking development on part of others by keeping the lease alive, there is both harsh dealings and sharp practice deserving to be called by the hard name of fraud. *Similar comment may be made if his purpose is to favor one lessor at the expense of another.*'

We feel defendants' conduct amounts to harsh dealings and sharp practice

---

**4.** *Rogers v. Heston Oil Co.*, Okl., 735 P.2d 542, 546 (1984); *Indian Territory Illuminating Oil Co. v. Rosamond*, 190 Okl. 46, 120 P.2d 349, 354 (1941).

**5.** *Rogers*, supra, note 4. This duty to drill an offset well is limited by the reasonably prudent operator rule, which requires the lessee to drill the offset well only if, in the judgment of a reasonably prudent operator, it would be a profitable undertaking. *Rogers*, 735 P.2d at 546.

**6.** *Indian Territory Illuminating Oil Co. v. Haynes Drilling Co.*, 180 Okl. 419, 69 P.2d 624 (1937), *cert. denied*, 302 U.S. 736, 58 S.Ct. 143, 82 L.Ed. 569 (1937); *North American Petroleum Co. v. Knight*, Okl., 321 P.2d 964 (1958).

properly deserving to be labeled fraudulent drainage." (emphasis added)

We are certainly not judging the appellees in the case at bar and labeling their conduct as fraudulent. Such determination could only be made after evidence has been presented. However, we consider the language of *Claro* and Professor Merrill's treatise to indicate that an action such as the appellants' is proper. This indication comes from the language regarding a lessee's favoring of one lessor over another, which is the crux of the appellants' action. Although the case mentions instances where the lessee "owns the fee, or royalty interest, in the adjoining land," we again do not find the distinction fatal to the appellants' argument. By owning the fee or royalty interest, the lessee will realize greater profits if he produces more oil and gas from the well in which he has a royalty interest than the one in which he does not (i.e., the lessor's land). Likewise, if the adjoining well produces minerals which are selling at a greater unit price, as the appellants in the case at bar claim the situation to be, then clearly the lessee's profit margin will increase by producing greater quantities from the adjoining well at the expense of the lessors whose well is receiving a lower price per unit for the minerals produced from it. We find that this analogy supports a reading of *Claro* to include situations where the lessee is not a fee or royalty interest owner.

Moreover, in *Samson Resources Co. v. Corporation Commission,* Okl., 702 P.2d 19, 23 (1985), this Court noted that "a mineral lessor has a right to enforce a lessee's implied covenant to develop a lease as a prudent operator, which includes a duty to protect against drainage by the *lessee's other operations."* (emphasis added) We hold that these *other operations* include the situation that appellants allege, that of a lessee producing more hydrocarbons from a well location exception adjacent to the lessor's land, thereby draining minerals

from the lessor's land. This holding does not declare that appellants are entitled to damages; they must prove their allegations in order to recover from appellee. Furthermore, we do not address the questions raised by the appellee concerning the application of the doctrines of res judicata or collateral estoppel because these questions are not ripe for review. Our holding merely answers the question posed. The district court *does* have subject matter jurisdiction to hear a damage action for breach of a contract and its implied covenant to protect against drainage by the lessee's other operations.

## II.

## FIDUCIARY DUTY TO PROTECT THE LESSOR'S CORRELATIVE RIGHTS

As we mentioned in Part I, *Samson,* supra, acknowledged the existence of a *duty* to protect against drainage by the lessee's other operations. This duty is inherent in and part of the lessee's implied covenant to develop the lease as a prudent operator. *Samson* further held that "the status of unit operator confers a duty to operate the leasehold as a unit and to safeguard the correlative rights of the various interest holders."[7] Moreover, "an interest holder in a unitized section has a right to enforce the unit operator's duty to conduct operations as a prudent operator." *Id.* Appellants claim that this duty, though not characterized as such, is fiduciary in nature because it is a higher duty than the duty created solely by the lease contract.

The appellants rely on *Reserve Oil, Inc. v. Dixon,* 711 F.2d 951 (10th Cir.1983), and *Young v. West Edmond Hunton Lime Unit* [8] for support of their proposition. In *Dixon,* the Tenth Circuit Court of Appeals determined that under Oklahoma law, "the operator of a unitized field stands in a position similar to that of a trustee with respect to those interested in the oil pro-

**7.** 702 P.2d at 23. See also: *Crest Resources and Exploration Corp. v. Corporation Commission,* Okl., 617 P.2d 215 (1980).

**8.** Okl., 275 P.2d 304 (1954), *appeal dismissed,* 349 U.S. 909, 75 S.Ct. 600, 99 L.Ed 1245 (1955).

duction," including the royalty owners. The Court in *Dixon* cited *Young* as support for this holding. We held in *Young* that a "unit organization with its operator" stands in this trustee-type position for all interested parties, be they lessees or royalty owners. The unit in *Young* sold oil to the unit operator and other oil purchasers at a price that was well below the market price. We reversed the trial court's judgment for the defendant unit and remanded for damages to be awarded to the plaintiff lessors to compensate them for lost royalties they would have received had the unit sold the oil at the market price.[9]

■ In a subsequent appeal after remand, we noted, in *West Edmond Hunton Lime Unit v. Young (Young II)*, Okl., 325 P.2d 1047, 1052 (1958), that the relationship between the unit and its operator (unit) and the royalty owners is fiduciary in nature. We discussed this holding in *Olansen v. Texaco, Inc.*, Okl., 587 P.2d 976, 984 (1978), again expressing the accountability of the unit to the royalty owners due to the fiduciary relationship. Therefore, we have recognized the existence of a fiduciary duty owed by a unit to the royalty owners and lessees who are parties to the unitization agreement or subject to the order creating the unit. This is not a duty created by the lease agreement but rather by the unitization order and agreement. The appellants owned no minerals in the Section 20 (Wosika) unit, and thus, no fiduciary duty was owed them for operations within that unit. The only fiduciary duty owed the appellants was created by the unitization of Section 21. It is incumbent upon them to show what, if any, violation of the fiduciary duty occurred in that unit.

■ Consequently, the district court has subject matter jurisdiction for an action on a unit's violation of the duty inherent in the operation of a unit. As we stated this duty is one owed by the unit organization with its operator, and under the facts of this case, the district court is the proper forum to determine whether a duty was violated.[10]

### III.

### MISREPRESENTATIONS TO THE OKLAHOMA CORPORATION COMMISSION

■ Although the plaintiffs have alleged causes of action of which the district court has subject matter jurisdiction in their contract claim and their violation of fiduciary duty claim, the third cause of action, entitled "Plaintiffs' Third Claim in Tort" is not properly brought before the district court. Appellants alleged in this third claim that the appellees breached a duty "to fully and fairly present the facts to the Corporation Commission to prevent it ... from relying on false or baseless contentions or testimony." In essence, the appellants are asking for damages because the appellee made misrepresentations to the commission during the hearing on the plaintiffs' application to have the allowable on the Wosika well reduced. This misrepresentation was characterized by the trial court as intrinsic fraud, and the court relied on the definition of intrinsic fraud this Court announced in *Chapman v. Chapman*, Okl., 692 P.2d 1369 (1984).

In *Chapman*, this Court stated that intrinsic fraud is:

"any fraudulent conduct of the successful party which was practiced during the course of an actual adversary trial of the issues joined and which had no effect directly and affirmatively to mislead the defeated party to his injury after he announced ready to proceed with trial. If during the trial the successful party urges forged instruments or perjured

**9.** The plaintiffs in *Young* did not bring their action against the unit operator nor their own lessee as the appellants in the case at bar did. This distinction is not pertinent because as we stated in *Young*, the unit organization *with its operator* stands in the trustee position.

**10.** We recognize, however, that the authority to remove a unit operator lies with the Corporation Commission.

testimony or fails to introduce witnesses of whom he has knowledge and whose testimony would help his adversary and impair his own case, he is guilty of fraud; but it is intrinsic fraud, for relief from which application must be made to the court having jurisdiction of the issues joined and tried." [11]

Relief from intrinsic fraud must be made by direct attack in the same case in which the fraud was committed. Since the Oklahoma Corporation Commission has the power and authority of a court of record in this state,[12] it naturally follows that if intrinsic fraud occurred during an adversarial trial before the commission, then under our holding in *Chapman*, the proper forum to hear allegations of the intrinsic fraud and rule upon them is the commission.[13]

We find that the allegations of misrepresentations as averred in the petition are allegations of intrinsic fraud because they refer to false information given by the appellee at the adversarial hearing before the commission on plaintiffs' application for a reduction in the allowable of the Wosika well. Consequently, subject matter jurisdiction does not lie in the district court for a cause of action on these alleged misrepresentations.

CERTIFIED QUESTIONS ANSWERED.

All the Justices concur.

---

**11.** 692 P.2d at 1373, n. 6.

**12.** Okla. Const. art. 9, § 19. See also, *Tenneco,* supra, note 1, at p. 1050.

**13.** Okla. Const. art. 9, § 24 prohibits collateral attacks upon any orders of the Corporation Commission. *Wiley v. Oklahoma Natural Gas Co.,* Okl., 429 P.2d 957 (1967).