FILED
United States Court of Appeals
Tenth Circuit

October 23, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

OPTIMA OIL & GAS COMPANY, LLC,
a Colorado Limited Liability Company,

Plaintiff-Appellant,

v.

MEWBOURNE OIL COMPANY,
a Texas Corporation,

Defendant-Appellee.

No. 11-6230
(D.C. No. 5:09-CV-00145-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

---

Optima Oil & Gas Company, LLC, appeals from the district court's order

granting Mewbourne Oil Company's motion to dismiss for lack of subject matter

jurisdiction. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Optima owned 85% of the oil and gas leasehold rights in certain property in Ellis County, Oklahoma (the Unit).[1] Mewbourne owned the remaining 15%. In 2006, Optima informed Mewbourne that it intended to be the operator of the Unit and that it was taking steps toward development of the Unit. Nonetheless, Mewbourne filed an application with the Oklahoma Corporation Commission (OCC) seeking an order force pooling Optima's rights and interests in the Unit and naming Mewbourne as the operator of the Unit.[2] Mewbourne sent notice of the application and hearing to Optima's Oklahoma City, Oklahoma office. An Optima employee signed the certified mail receipt, but did not give anyone in management the certified mail. Optima did not appear at the hearing on the application, because it did not know about it.

Despite knowing Optima's opposition to the pooling application, Mewbourne proceeded at the hearing before an OCC Administrative Law Judge (ALJ) with an uncontested application for force pooling. The ALJ recommended to the OCC that the pooling application be granted.

The day after the hearing, someone at Optima discovered the unopened mail containing the notice of hearing and the application. Optima filed a motion to stay

---

[1]    The Unit was in Section 1, Township 20 North, Range 24 West, Ellis County, Oklahoma.

[2]    "'Force pooling' occurs when the [OCC] requires owners of drilling rights to pool their interests and contribute to development costs." *Fleet v. Sanguine, Ltd.*, 854 P.2d 892, 895 n.8 (Okla. 1993), *abrogated on other grounds by Purcell v. Santa Fe Minerals, Inc.*, 961 P.2d 188, 193 (Okla. 1998).

issuance of an order granting the pooling application or to reopen proceedings. Although the motion was set for a hearing, the OCC granted the pooling application before the motion was heard. The same day the application was granted, Optima filed a motion to vacate the pooling order and requested a full hearing on the application's merits.

The ALJ held a hearing on the motion to reopen, at which Optima presented witness testimony and argued that Mewbourne knew it opposed the application for force pooling and to name Mewbourne as operator. Mewbourne also appeared at the hearing and presented argument. The following day, the ALJ heard the motion to vacate, and the parties presented additional testimony, evidence, and argument. Mewbourne's witness admitted on redirect that he knew Optima objected to the pooling application and request to name Mewbourne as operator. The ALJ recommended that the pooling order be vacated and the matter be reopened for a complete hearing on the merits, in light of the question of notice and Mewbourne's knowledge that Optima opposed the pooling application. An appellate referee agreed with the ALJ's recommendation, but the OCC rejected the recommendations to grant the motions to vacate and reopen. Optima appealed.

The Oklahoma Court of Civil Appeals vacated the pooling order and the order denying the motions to reopen and to vacate, concluding that the OCC erroneously designated Mewbourne as operator. The Oklahoma Court of Civil Appeals found that Optima did not have actual notice of the pooling application and that Mewbourne

had presented the application as uncontested despite knowing that Optima would oppose it. Also, the court found that Mewbourne misled the OCC by failing to disclose facts necessary for the OCC to make an informed decision. The Oklahoma Court of Civil Appeals remanded to the OCC "for a full hearing on the merits of Mewbourne's Pooling Application and any further proceedings consistent with this opinion." Aplt. App., Vol. 1, at 47. The Oklahoma Supreme Court affirmed the Oklahoma Court of Civil Appeal's decision in favor of Optima.

Optima then filed this suit in federal district court against Mewbourne, alleging claims of tortious interference with contractual relationships and tortious interference with prospective business opportunities and seeking damages.[3] The complaint asserted that while the appeal from the OCC's decision was pending, Optima's lessors agreed to extend the leases for six months to commence drilling. Even though the lease extensions were recorded, Mewbourne contacted the lessors and convinced them to sign top leases covering the same leases Optima held.[4] Optima asserted that although Mewbourne knew Optima's lease extensions would expire if Mewbourne delayed drilling beyond the six-month extension time, Mewbourne filed a motion with the OCC for a one-year extension of time to begin

---

[3] Optima also asserted abuse-of-process, fraud, and constructive-fraud claims in its complaint, but later voluntarily dismissed those claims.

[4] A top lease is a "lease[] that take[s] effect only if the pre-existing lease should expire or be terminated." *Concorde Res. Corp. v. Kepco Energy, Inc.*, 254 P.3d 734, 736 n.4 (Okla. Civ. App. 2011).

- 4 -

drilling. A hearing was held on the motion. Both parties appeared and Optima objected to an extension. According to Optima, Mewbourne misrepresented at the hearing that granting an extension would preserve the status quo, even though Mewbourne knew that Optima would lose its leasehold rights in the Unit and those rights would vest in Mewbourne due to the top leases. The OCC granted a one-year extension of the date to begin drilling. Optima successfully appealed, but its leases had already expired and Mewbourne had obtained all of Optima's leasehold interests.

In the complaint, Optima asserted that Mewbourne's tortious conduct caused it to lose significant business opportunities and subjected it to financial harm. Optima maintained that during Mewbourne's actions before the OCC to force pool the Unit, Mewbourne, under oath, knowingly withheld and misrepresented material facts to the OCC, wrongfully depriving Optima of its leasehold rights and interests. And "Mewbourne engaged in wrongful and fraudulent conduct at the [OCC] designed to deny Optima the ability to commence drilling within the time necessary to preserve its leasehold rights." *Id*. at 25. Further, Optima contended that Mewbourne's actions, despite knowing Optima held an 85% leasehold interest, resulted in extinguishment of Optima's leasehold interests, thereby denying Optima prospective business opportunities.

The district court denied Mewbourne's first two motions to dismiss—one under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted and the other under Federal Rule of Civil Procedure

- 5 -

12(b)(1) for lack of subject matter jurisdiction due to incomplete diversity of citizenship between the parties. The court granted, in part, Optima's motion for partial summary judgment under Federal Rule of Civil Procedure 56, holding that Mewbourne is bound by the Oklahoma Court of Civil Appeal's determination that Mewbourne misled the OCC, causing it to enter an erroneous pooling order.

Mewbourne filed a third motion to dismiss. This Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction asserted that Optima must submit its tortious interference claims for damages to the OCC. The district court granted the motion, relying on *Leck v. Continental Oil Co*., 800 P.2d 224 (Okla. 1989). In *Leck*, the plaintiff sought damages for misrepresentations the defendant made to the OCC during a hearing. *Id*. at 229. *Leck* held that the OCC has jurisdiction to consider intrinsic fraud claims for damages based on a defendant's misrepresentations to the OCC during adversarial proceedings. *Id*. at 229-30. The district court determined that, as in *Leck*, Optima's complaint made clear that its tortious interference claims arose from Mewbourne's misrepresentations to the OCC and jurisdiction would therefore lie only in the OCC, not the district court. This appeal followed.[5]

---

[5] Before ruling on the second motion to dismiss, the district court held an evidentiary hearing on the issue of whether there was complete diversity of citizenship between the parties. The court concluded that there was. On appeal, we granted Optima's unopposed motion to file a Supplemental Appendix containing an affidavit more clearly establishing diversity. Accordingly, the only jurisdictional question before us is whether the district court erred in granting the third motion to dismiss.

**ANALYSIS**

We review de novo the district court's Rule 12(b)(1) dismissal for lack of subject matter jurisdiction. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009). In doing so, we "accept[] the district court's findings of jurisdictional facts unless they are clearly erroneous." *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1231 (10th Cir. 2012) (internal quotation marks omitted).

Optima argues that the district court had subject matter jurisdiction over its tort claims related to or arising from Mewbourne's misconduct before the OCC. Optima contends that the court applied *Leck* too broadly, because *Leck* is limited to cases involving intrinsic fraud, whereas its tort claims involve extrinsic fraud. *See Leck*, 800 P.2d at 226 (stating that "allegations . . . in the nature of intrinsic fraud" must be decided in forum where fraud occurred). Optima maintains that all issues of fact concerning intrinsic fraud were resolved by the Oklahoma Court of Civil Appeals, but its tort claims could not be resolved by the OCC because they are not based on the adjudicated facts.

*Leck* defines intrinsic fraud as

> any fraudulent conduct of the successful party which was practiced during the course of an actual adversary trial of the issues joined and which had no effect directly and affirmatively to mislead the defeated party to his injury after he announced ready to proceed with trial. If during the trial the successful party urges forged instruments or perjured testimony or fails to introduce witnesses of whom he had knowledge and whose testimony would help his adversary and impair his own case, he is guilty of fraud; but it is intrinsic fraud, for relief from which application must be made to the court having jurisdiction of the issues joined and tried.

- 7 -

800 P.2d at 229-30 (internal quotation marks omitted).  In contrast, extrinsic fraud is "(a) any fraudulent conduct of a successful party, (b) perpetrated *outside* of an actual adversary trial or process and (c) practiced directly and affirmatively on the defeated party, (d) whereby he was prevented from presenting *fully* and *fairly* his side of the case."  *Patel v. OMH Med. Ctr., Inc.*, 987 P.2d 1185, 1196 (Okla. 1999).  "Examples of extrinsic fraud include false representations that the defeated party is merely a nominal party against whom no relief is sought, false promise of compromise, concealment of suit, kidnapping of witnesses, and similar conduct."  *Id*.  The *Leck* court found that the "allegations of misrepresentation" in that case were "allegations of intrinsic fraud because they refer[red] to false information given by the appellee at the adversarial hearing before the [OCC]."  800 P.2d at 230.

In its complaint, Optima asserted misrepresentation by Mewbourne to the OCC as the basis for its claims.  With respect to the tortious interference with contractual and business relations claim, Optima asserted that "[a]s a result of Mewbourne's misconduct, Mewbourne interfered with Optima's contractual rights under its leases. . . . Mewbourne engaged in wrongful and fraudulent conduct at the [OCC] designed to deny Optima the ability to commence drilling within the time necessary to preserve its leasehold interests."  Aplt. App., Vol. 1, at 25.  With respect to the tortious interference with prospective business advantage, Optima asserted that "Mewbourne's intentional and tortious acts and conduct resulted in the extinguishment of Optima's leasehold interests.  Mewbourne wrongfully,

intentionally and maliciously interfered with [Optima's] prospective business advantage by cutting off Optima's leasehold interests and all potential business opportunities related thereto . . . ." *Id*. at 26.

As the district court found, these claims arise from misrepresentations made by Mewbourne to the OCC and any damages arise as a result of the misrepresentations. The alleged fraudulent misrepresentations to the OCC with regard to cutting off Optima's leasehold interests are intrinsic fraud. *See Fransen v. Conoco, Inc.*, 64 F.3d 1481, 1489 (10th Cir. 1995). "A claim that a party misrepresented facts to the OCC is properly brought before the OCC." *Id*. (citing *Leck*); *Leck*, 800 P.2d at 230 ("Relief from intrinsic fraud must be made by direct attack in the same case in which the fraud was committed."). The district court therefore correctly determined that it did not have jurisdiction to consider Optima's claims. *See Fransen*, 64 F.3d at 1489 (citing *Leck*); *Leck v. Cont'l Oil Co.*, 892 F.2d 68, 69 (10th Cir. 1989) (per curiam) (concluding that district court correctly decided that it lacked subject matter jurisdiction to consider issue regarding misrepresentation to OCC).

Optima also contends that *Leck* is distinguishable because there was no adversarial proceeding on the merits of the force pooling application.[6] *See Leck*,

---

[6] Mewbourne contends that this issue, as well as others, were not raised in the district court and therefore should not be considered on appeal. We reject that argument because waiver and forfeiture rules do not apply to jurisdictional issues and therefore issues concerning jurisdiction can be raised at any time. *See Forest Guardians v. U.S. Forest Serv.*, 495 F.3d 1162, 1170 n.7 (10th Cir. 2007); *Huerta v. Gonzales*, 443 F.3d 753, 755 (10th Cir. 2006).

800 P.2 at 230 (noting misrepresentation made at adversarial hearing). It is true that the proceedings on the uncontested application were not adversarial because Optima had not received actual notice of the hearing and application and therefore did not appear at the hearing. All other proceedings before the OCC, however, were adversarial proceedings. And the Oklahoma Court of Civil Appeals explicitly remanded for a full hearing on the merits of the pooling application. Therefore, we conclude that there were adversarial proceedings available for Optima to assert its claims against Mewbourne.

Optima next contends that Okla. Stat. tit. 23, § 3 permits a cause of action for tortious interference. *See id.* ("Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."). This statute does not in any way undermine *Leck's* holding that proceedings on intrinsic fraud must occur before the OCC, not the district court.

Optima further contends that because it does not seek relief from the prior OCC ruling on the intrinsic fraud issues that have already been vacated and there is no issue to reconsider at the OCC, the only remaining issue is a private dispute for money damages, which is appropriately heard in the district court. "The distinction between public and private rights is not always immediately apparent." *Rogers v. Quiktrip Corp.*, 230 P.3d 853, 857 (Okla. 2010). *Leck* states that district courts have jurisdiction over private rights disputes, whereas the OCC has limited jurisdiction to

protect the "public rights in development and production of oil and gas." 800 P.3d at 226; *see id*. (indicating that unitization orders, pooling orders, and orders setting allowables on unit's well are matters of public rights; recognizing that OCC "has jurisdiction to hear only public rights disputes involving actions on joint operating agreements or disputes concerning a pooling order's effect"); *see also Rogers*, 230 P.3d at 857 ("Public rights, at a minimum, must arise between the government and others:  the liability of one individual to another under the law as defined is a matter of private rights.").  When addressing the misrepresentation issue, *Leck* does not expressly state that it is dealing with a public right.  We conclude, however, that *Leck* considered a public right, because the essence of the claim was intrinsic fraud on a tribunal.  Since we conclude that intrinsic fraud is at issue in this case, we also conclude that a public right is at issue.  Additionally, we note the *Leck* plaintiff sought money damages for the misrepresentations to the OCC.  Leck, 800 P.2d at 229.  Therefore, nothing in *Leck* precludes Optima from also seeking damages from the OCC.

## CONCLUSION

Accordingly, we conclude the district court correctly granted Mewbourne's motion to dismiss for lack of subject matter jurisdiction.  The judgment of the district court is AFFIRMED.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge