2010 OK CIV APP 145

**GRAYHORSE ENERGY, LLC; TLJ Investments, LLC; Singer Bros. LLC; and Pedestal Oil Company, Inc., Plaintiffs/Appellants,**

v.

**CRAWLEY PETROLEUM CORPORATION, an Oklahoma corporation, Defendant/Appellee.**

**No. 107,704.**

Court of Civil Appeals of Oklahoma, Division No. 2.

July 29, 2010.

Certiorari Denied Oct. 18, 2010.

Jessie V. Pilgrim, Levinson, Smith & Huffman, P.C., Tulsa, OK, for Plaintiffs/Appellants.

Robert W. Dace, Gary W. Catron, Philip D. Hart, McAfee & Taft A Professional Corporation, Oklahoma City, OK, for Defendant/Appellee.

1. Record (R.), tab 3, exh. C. This spelling is derived from the corporate letterhead.

2. This is an accelerated appeal. Rule 1.36, Okla. Sup.Ct.R., 12 O.S. Supp.2004, ch. 15, app. 1.

3. *See Tucker v. Special Energy Corp.,* 2008 OK 57, ¶ 13, 187 P.3d 730, 734, and *Id.* at 734–35 (Opala, J., concurring).

DEBORAH B. BARNES, Judge.

¶ 1 Plaintiffs/Appellants Grayhorse Energy, LLC, TLJ Investments, LLC, Singer Bros. LLC, and Pedestal Oil Company, Inc., (collectively, the GrayHorse[1] group) seek review of the trial court's order sustaining Defendant/Appellee Crawley Petroleum Corporation's (Crawley) motion to dismiss for lack of subject matter jurisdiction.[2] We express no view upon the merits of any element of the GrayHorse group's claims,[3] but reverse the trial court's order because, in the context of mineral interests and oil and gas leaseholds, subject matter jurisdiction rests solely with the district courts to determine private rights,[4] and the Oklahoma Corporation Commission (the OCC), although possessing many of the powers of a court of record, is without the authority to entertain a suit for damages.[5] We remand this case for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Crawley produces and operates oil and gas wells in Oklahoma. On May 4, 2009, the GrayHorse group filed a petition against Crawley seeking money damages pursuant to the alternative legal theories of conversion, negligence, constructive fraud, and unjust enrichment. The GrayHorse group asserts in the petition that Crawley is the operator of the Russell State # 2–36 oil and gas well (the Well) in which the GrayHorse group owns a working interest. It further claims that in 2008, without its authorization or approval, Crawley wrongfully used the GrayHorse group's "casing, pipe, wellbore and other associated personal property from [the Well]." The GrayHorse group claims that as a result of Crawley's wrongful use or conversion of this property, "the sale of oil and gas ceased and each plaintiff has suffered economic injury."

4. *Leck v. Continental Oil Co.,* 1989 OK 173, ¶ 6, 800 P.2d 224, 226.

5. *Rogers v. Quiktrip Corp.,* 2010 OK 3, ¶ 6, 230 P.3d 853, 857.

¶ 3 Crawley filed an answer in which it denies that it performed any wrongful acts. However, Crawley admits that it is the operator of the Well.

¶ 4 Crawley filed a motion to dismiss for lack of subject matter jurisdiction. Crawley argues in its motion that the matters the GrayHorse group seeks to litigate in the district court are matters over which the OCC had exclusive jurisdiction in a previous OCC Cause, CD No. 200804943, resulting in a forced-pooling order, OCC No. 558403 (the Pooling Order), involving the GrayHorse group, named as respondents, and Crawley, as applicant. Crawley maintains that the purpose of the pooling was to re-complete the Well in the Third Deese (Gibson Sand) formation, prior production from the Well having been from the lower Sycamore and Hunton formations. It appears from the documents attached to Crawley's motion to dismiss that the GrayHorse group elected not to participate in the development of the unit under the Pooling Order,[6] that it did not come forth in opposition to the Pooling Order at the OCC hearing, and that the Pooling Order was not appealed. Crawley argues that the GrayHorse group's attempt to now litigate its claims for conversion, negligence, constructive fraud, and unjust enrichment in the district court constitutes an impermissible collateral attack on the Pooling Order entered by the OCC.[7]

¶ 5 The GrayHorse group filed an objection to Crawley's motion to dismiss. Each of the Appellants (which, for convenience purposes only, we call, collectively, the GrayHorse group) asserts it is a working interest owner in the Well which has produced natural gas from the lower Sycamore and Hunton formations since 1984. The GrayHorse group contends it "owned **and still own[s]**, collectively, 21.875% of the tubing, casing, pipe, wellbore and other associated personal property to the [Well]."[8] The GrayHorse group argues that its claims against Crawley constitute a private dispute for money damages and, therefore, the district court has subject matter jurisdiction.

¶ 6 The trial court agreed with Crawley[9] and, in an order filed on October 23, 2009, granted Crawley's motion to dismiss for lack of subject matter jurisdiction.[10] In its order,

---

**6.** It appears from these documents that in electing not to participate, the GrayHorse group, or, at least, Grayhorse Energy, LLC, chose option 6.c., entitled "Overburdened Interest." The details of this option are set forth on page two of the Pooling Order.

**7.** In this previous OCC Cause, Crawley applied for a forced-pooling order to pool the interest owners in the Third Deese (Gibson Sand) common source of supply underlying certain land in Garvin County, Oklahoma. Crawley's application was successful and resulted, as stated above, in OCC Order No. 558403, dated August 21, 2008, in which Crawley was named operator. The legal description of the property for which the pooling order was entered, as it appears in the pooling order, is "SW/4 SW/4 OF SECTION 36, TOWNSHIP 3 NORTH, RANGE 3 WEST, GARVIN COUNTY, OKLAHOMA." R., tab 3, exh. A.

**8.** The GrayHorse group's objection to Crawley's motion to dismiss, tab 4, p. 4.

**9.** Crawley also filed a reply to the GrayHorse group's objection. Additionally, in reaching its decision the trial court "considered the argument of able counsel presented on October 9, 2009." A transcript of this hearing is not included in the appellate record.

**10.** Because matters outside the pleadings were presented to and not excluded by the trial court, the trial court converted Crawley's motion to dismiss to a motion for summary judgment and the GrayHorse group's objection to Crawley's motion to dismiss to a response to a motion for summary judgment. However, the procedure converting a motion to dismiss into a motion for summary judgment when matters outside the pleadings are presented applies only to motions to dismiss for failure to state a claim upon which relief can be granted, 12 O.S. Supp.2004 § 2012(B)(6), but does not apply to motions to dismiss for lack of subject matter jurisdiction under § 2012(B)(1). *See* § 2012 ("[i]f, on a motion asserting the defense numbered 6 of this subsection to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to the motion by the rules for summary judgment."), and *Willbros USA, Inc. v. Certain Underwriters at Lloyds of London*, 2009 OK CIV APP 90, ¶ 7 n. 4, 220 P.3d 1166, 1171 n. 4. Because this case involves only a motion to dismiss for lack of subject matter jurisdiction, we will treat the trial court's order as one granting a motion to dismiss rather than as one granting a motion for summary judgment.

the trial court set forth the following "Findings of Fact:"

1. Each of the Plaintiffs owns a fractional working interest in [the Well].

2. [The Well] is located on a 40 acre drilling and spacing unit established by [the OCC] described as:

SW/4 of the SW/4 of Section 36,

T3N, R3W Garvin County, Oklahoma.

3. [Crawley] owns a fractional working interest in [the Well] and is the operator of [the Well].

4. Prior to, on or about May 28, 2008 [the Well] had been productive from the Sycamore and Hunton formations.

5. [Crawley] on or about May 28, 2008 proposed to [the GrayHorse group] and other owners of working interests in [the Well] to recomplete [the Well] in the Third Deese (Gibson Sand) formation.

6. [The GrayHorse group] declined to participate as working interest owners in [Crawley's] proposal to recomplete [the Well] in the Third Deese (Gibson Sand) formation.

7. [Crawley] thereupon filed an application, Corporation Commission cause CD No. 200804943, for an order pooling interests and adjudicating the rights and equities of oil and gas owners in the Third Deese (Gibson Sand) common source of supply underlying the forty acre tract of land upon which [the Well] is located.

8. On August 21, 2008 [the OCC] entered its order number 558403 pooling and adjudicating the rights and equities of owners in the proposed completion efforts in the Third Deese (Gibson Sand) formation in [the Well].

9. [Crawley] proceeded to recomplete [the Well] in the Third Deese (Gibson Sand) formation after [the GrayHorse group] declined to participate in those efforts as working interest owners.

10. [The GrayHorse group] in this case alleges [Crawley] converted the casing, pipe and wellbore of [the Well] to its own use in recompletion of [the Well] in the Third Deese (Gibson Sand) formation, causing damage to [the GrayHorse group].

¶ 7 The trial court determined that because "[the OCC] has sole authority to adjust the rights and equities and protect the correlative rights of all interested parties in proceedings for the issuance of a pooling order" (citing *Woods Petroleum Corp. v. Sledge*, 1981 OK 89, 632 P.2d 393), the GrayHorse group's sole recourse was a timely appeal of the Pooling Order to the Oklahoma Supreme Court. Therefore, the trial court granted Crawley's motion to dismiss for lack of subject matter jurisdiction. From this order, the GrayHorse group appeals.

## STANDARD OF REVIEW

 ¶ 8 "When reviewing a trial court's dismissal of an action an appellate court examines the issues de novo." *Rogers v. Quiktrip Corp.*, 2010 OK 3, ¶ 4, 230 P.3d 853, 855–56 (footnote omitted). "Motions to dismiss are generally viewed with disfavor." *Id.* (footnote omitted.) "The purpose of a motion to dismiss is to test the law that governs the claim in litigation rather than to examine the underlying facts of that claim." *Id.* (footnote omitted). "When reviewing a motion to dismiss, the Court must take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them." *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 6, 212 P.3d 1158, 1162 (footnote omitted).[11]

 ¶ 9 The only issue on appeal is whether the trial court has subject matter jurisdiction. We will review this issue of law *de novo*, without deference to the trial court.[12]

11. "Generally, motions to dismiss are viewed with disfavor." *Gens v. Casady School*, 2008 OK 5, ¶ 8, 177 P.3d 565, 568 (footnote omitted). "This [C]ourt reviews the dismissal *de novo* considering the legal sufficiency of the petition and taking all allegations in the plaintiff's petition as true." *Id.* at ¶ 8, 177 P.3d at 568–69 (footnote omitted). "The purpose of a motion to dismiss is to test the law that governs the claim in litigation, not the underlying facts." *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 6, 212 P.3d 1158, 1162 (footnote omitted).

12. "When there are no contested jurisdictional facts, the question of subject matter jurisdiction is purely one of law which we review *de novo*."

## ANALYSIS

¶ 10 Although the OCC has the authority of a court of record, it has limited jurisdiction. *Tucker v. Special Energy Corp.*, 2008 OK 57, ¶ 9, 187 P.3d 730, 733. Any action by the OCC must be authorized by statute. *Id. See also Rogers v. Quiktrip Corp.*, 2010 OK 3, ¶ 6, 230 P.3d 853, 857 (the OCC "possesses only such authority as is expressly or by necessary implication conferred upon it by the constitution and statutes of Oklahoma."). Pursuant to 52 O.S. Supp.2006 § 86.1 et seq., the OCC oversees the conservation of oil and gas and its jurisdiction is limited to the resolution of public rights. *Tucker* at ¶ 9, 187 P.3d at 733. "Public rights are involved [in the area of oil and gas conservation] when 'a unitization order, pooling order, or order setting the allowables on the unit's well' affects 'the correlative rights of all mineral rights owners in [a] common source of supply [in a] unit.'" *Id.* (quoting *Leck v. Continental Oil Co.*, 1989 OK 173, ¶ 8, 800 P.2d 224, 226).[13]

¶ 11 Once the OCC has entered an order, it cannot be "collateral[ly] attack[ed]" in the district court. 52 O.S.2001 § 111. That is, "the sole method" of reviewing OCC orders "and inquiring into and determining their validity, justness, reasonableness or correctness shall be by appeal from such orders ... to the Supreme Court." *Id. See also SKZ, Inc. v. Petty*, 1989 OK 150, ¶¶ 11–12, 782 P.2d 939, 943 ("[w]hen free from [a jurisdictional] infirmity, a pooling order is *res judicata*"). However, a pooling order, or other OCC order, does not immunize the operator, or other parties connected to the pooling order, from lawsuits in the district courts. Rather, the district courts are simply without power to reverse, modify, or correct OCC orders. 52 O.S.2001 § 111. The district courts do have the power to *adjudicate the legal effect* of an OCC order when necessary to resolve a dispute over private rights. *See Tucker* at ¶ 11, 187 P.3d at 734 (quoting *Nilsen v. Ports of Call Oil Co.*, 1985 OK 104, ¶ 12, 711 P.2d 98, 101) ("[t]he district court clearly has jurisdiction to adjudicate the legal effect ... of [an OCC] order ... upon title to land."). *See also Arrowhead Energy, Inc. v. Baron Exploration Co.*, 1996 OK 120, 930 P.2d 181 (stating that while only the OCC has jurisdiction to interpret, clarify, amend and supplement its orders as well as resolve any challenges to the public issue of conservation of oil and gas, the district court has jurisdiction to determine the legal effect of OCC rules and orders).

¶ 12 As implied above, district courts have jurisdiction to resolve disputes over *private rights* involving mineral interests and oil and gas leaseholds. *Tucker v. Special Energy Corp.*, 2008 OK 57, ¶ 10, 187 P.3d 730.[14] "[S]ubject matter jurisdiction rests solely with the district court to deter-

---

*Reeds v. Walker*, 2006 OK 43, ¶ 10, 157 P.3d 100, 107. *See also NBI Services, Inc. v. Ward*, 2006 OK CIV APP 20, 132 P.3d 619 (in a case involving an OCC order, the issue of whether the trial court had subject matter jurisdiction to hear and decide the surface owners' claim for damages was subject to *de novo* review by the Court). Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings. *Kluver v. Weatherford Hospital Authority*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1083 (citation omitted).

**13.** In *Kingwood Oil Co. v. Hall–Jones Oil Corp.*, 1964 OK 231, 396 P.2d 510, the Oklahoma Supreme Court adopted the following definition of "correlative rights:"

> The term "correlative rights" has been defined as a convenient method of "indicating that each owner of land in a common source of supply of oil and gas has legal privileges as against other owners of land therein to take oil and gas therefrom by lawful operations conducted on his own land, limited, however, by duties to other owners not to injure the source of supply and by duties not to take an undue proportion of the oil and gas." Summers, Oil and Gas, Vol. 1, Sec. 63.

*Samson Resources Co. v. Corporation Commission*, 1985 OK 31, ¶ 9, 702 P.2d 19, 22.

**14.** District courts have unlimited original jurisdiction of all justiciable matters by authority of Article 7, § 7 of the Oklahoma Constitution in all cases where exclusive jurisdiction is not given to some other court, or as otherwise provided by the Constitution. *Fent v. Oklahoma Natural Gas Co.*, 1990 OK CIV APP 70, 804 P.2d 1146; *State of Oklahoma ex rel. Southwestern Bell Telephone Co. v. Brown*, 1974 OK 19, 519 P.2d 491. Thus, Oklahoma has maintained the public right/private right distinction.

mine private rights in mineral interests and oil and gas leaseholds. . . ." *Leck v. Continental Oil Co.,* 1989 OK 173, ¶ 6, 800 P.2d 224, 226.[15] That is, the OCC "is without authority to hear and determine disputes between two or more private persons or entities in which the public interest is not involved." *Rogers v. Quiktrip Corp.,* 2010 OK 3, ¶ 7, 230 P.3d 853, 857 (footnote omitted). When the conflict between the parties does not affect the "rights within a common source of supply and thus" does not affect "the public interest in the protection of production from that source as a whole," the district courts, and not the OCC, have jurisdiction. *Samson Resources Co. v. Corporation Commission,* 1985 OK 31, ¶ 9, 702 P.2d 19, 22. *See also Rogers* at ¶ 6, 230 P.3d at 857 ("[t]he function of the [OCC] is to protect the rights of the body politic; private rights and obligations of private parties lie within the purview of the district court."); and *Tenneco Oil Co. v. El Paso Natural Gas Co.,* 1984 OK 52, 687 P.2d 1049 (finding that the trial court has jurisdiction over a case between interested parties to a forced-pooling order who contracted between themselves concerning the interests created by the forced-pooling order and where no public issue within the jurisdiction of the OCC was changed or challenged).

¶ 13 In the context of mineral interests and oil and gas leaseholds, the Oklahoma Supreme Court has held "questions in an action concerning the relationship of private parties, their duties, rights and obligations, and the existence of liability for the breach of such duties to be matters particularly with[in] the province of the district court." *Rogers* at ¶ 7, 230 P.3d at 858 (discussing *Samson Resources Co.,* 1985 OK 31,

702 P.2d 19). Furthermore, in *Kingwood Oil Co. v. Hall–Jones Oil Corp.,* 1964 OK 231, 396 P.2d 510, 512, the Oklahoma Supreme Court found no authority granting the OCC "jurisdiction to hear and render judgment in an action for damages sounding in tort," and held that the OCC does not have jurisdiction to try damages suits.[16] As recently stated by the Court, "[t]he [OCC], although possessing many of the powers of a court of record, is without the authority to entertain a suit for damages." *Rogers* at ¶ 6, 230 P.3d at 857 (footnote omitted).

¶ 14 The GrayHorse group claims that Crawley converted its tubing, casing,[17] pipe, wellbore and other associated personal property from the Well, and it seeks money damages as compensation. Additionally, the GrayHorse group seeks money damages pursuant to the legal theories of negligence, constructive fraud, and unjust enrichment. The GrayHorse group states that its "lawsuit is about the ownership of and title to the tubing, casing, pipe, wellbore and other associated personal property in [the Well] ruined by [Crawley]." [18]

¶ 15 Crawley, in its motion to dismiss and in its reply, does not dispute that it is "indeed using the casing, pipe, and wellbore" of the Well. However, it argues that it is doing so properly and as the operator pursuant to a pooling order—it is doing so to produce oil and gas from the Third Deese (Gibson Sand) formation in which Crawley recompleted the Well pursuant to the Pooling Order under which the GrayHorse group elected not to participate.[19] Crawley admits that the GrayHorse group is comprised of owners of an interest in the casing, pipe, and

---

**15.** "The distinction between public and private rights is not always immediately transparent." *Rogers v. Quiktrip Corp.,* 2010 OK 3, ¶ 7, 230 P.3d 853, 857.

**16.** In *Kingwood,* the Court stated that the right of the individual owner to take oil or gas from the reservoir in lawful operations is limited only by a duty to other owners (1) not to injure the source of supply and (2) not to take a disproportionate part of the oil and gas. *Kingwood* at ¶ 8, 396 P.2d at 512. An award of damages for the violation of one or both of these duties is possible only in the district courts.

**17.** The measure of damages for the use of another's casing in Oklahoma is the reasonable rental value of the casing. *O'Brien, L.L.C. v. Norman,* 2010 OK CIV APP 23, ¶¶ 23–25, 233 P.3d 413 (citing *Okmulgee Supply Corp. v. Anthis,* 1940 OK 428, 114 P.2d 451).

**18.** R., tab 4, p. 2.

**19.** We note that a forced-pooling order does not, by itself, create a tenancy in common. *Schulte v. Apache Corp.,* 1995 OK 148, 949 P.2d 291. *See also Schulte v. Apache Corp.,* 1991 OK 61, 814 P.2d 469.

wellbore, but Crawley asserts that the GrayHorse group should have asserted its claim for compensation in the pooling proceeding when the OCC would and could have considered it in adjusting the equities. Likewise, the OCC "could and would have considered and determined" in the pooling proceeding the GrayHorse group's claim that it has suffered economic injury because the well has ceased producing (albeit temporarily) from the Sycamore and Hunton formations.

¶ 16 Crawley appears to be arguing pursuant to the doctrine of primary jurisdiction. For example, this appears to be the case when Crawley states in its reply brief, pp. 4–5, that "[the OCC] is well equipped to deal with [the GrayHorse group's claims] in a meaningful and effective way...." Primary jurisdiction would allow certain private right disputes to be resolved by the OCC if the claim involves issues that fall within the scope of the regulatory scheme of the OCC and, thus, involve its expertise. *See Tenneco Oil Co. v. El Paso Natural Gas Co.*, 1984 OK 52, n. 1, 687 P.2d 1049, 1057 n.1 (Opala, J., dissenting). That is, primary jurisdiction would allow a court to suspend the judicial process pending referral of such issues to the OCC for its views and input. *See United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 64–65, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). However, Oklahoma has *not* adopted the doctrine of primary jurisdiction despite suggestions from some commentators to do so.[20] As shown above, Oklahoma has maintained the public right/private right distinction.

¶ 17 The GrayHorse group's claims against Crawley clearly constitute a suit for damages—in fact, the GrayHorse group only seeks the remedy of money damages for Crawley's alleged wrongful use of the casing, pipe, wellbore and other associated personal property of the Well, as well as alleged destruction of the production stream of natural gas from the lower Sycamore and Hunton formations of the Well. For this reason alone, the OCC does not have jurisdiction. Once again, "[t]he [OCC] ... is without the authority to entertain a suit for damages." *Rogers* at ¶ 6, 230 P.3d at 857 (footnote omitted).

¶ 18 The only case cited in the trial court's order to support its finding that it lacked jurisdiction is *Woods Petroleum Corp. v. Sledge*, 1981 OK 89, 632 P.2d 393. However, *Woods* is clearly distinguishable. In *Woods*, the question presented was "whether the district court had jurisdiction to entertain an action to quiet title after [the OCC] had entered an order *substantially affecting the same rights*." *Id.* at ¶ 1 (emphasis added). The quiet title action in *Woods* had the potential to modify previous OCC orders and change the correlative rights of the parties.

¶ 19 In the instant case, however, although the trial court may be required, for example, to adjudicate the legal effect of the Pooling Order to determine whether it conveys "title to [Crawley] of an ownership interest in [the GrayHorse group's] tubing, casing, pipe, wellbore and other associated personal property to [the Well],"[21] this is within the district court's power when resolving private rights disputes. Furthermore, the GrayHorse group does not seek to change its, or another party's, correlative rights. Although this dispute may *involve* rights within a common source of supply, the resolution of the GrayHorse group's claims against Crawley will not affect those rights. Because the GrayHorse group seeks a remedy only for the alleged infringement of its private, common law rights, the OCC has no jurisdiction over this dispute.

¶ 20 Crawley's argument regarding the GrayHorse group's fraud claim, that it is really a claim for intrinsic fraud that occurred before the OCC and which, therefore, can only be ruled upon by the OCC,[22] is not supported by the contents of the GrayHorse group's petition. In its petition, the GrayHorse group states that Crawley had a legal duty to inform it that Crawley had converted

---

20. *See, e.g.*, Note, "Interpretation of Corporation Commission Orders: The Dichotomous Court/Agency Jurisdiction," 8 Okla. City U.L.Rev. 311 (1983).

21. R., tab 4, p. 5.

22. *See Leck v. Continental Oil Co.*, 1989 OK 173, ¶¶ 20–23, 800 P.2d 224, 229–30.

the casing, pipe, wellbore and other associated personal property from the Well. By failing to inform the GrayHorse group of these actions, it claims that Crawley committed constructive fraud. There is no indication in the petition that the GrayHorse group's fraud claim involves actions by Crawley undertaken during and/or in connection with the OCC procedures leading up to the Pooling Order. Therefore, we find that the district court does not lack jurisdiction over this claim.

¶ 21 In fact, this claim, along with the rest of the GrayHorse group's claims, is particularly within the jurisdiction of the district courts to resolve and, if appropriate, award money damages. These claims involve the resolution of private, common law issues sounding in tort or, alternatively, restitution (unjust enrichment), and this dispute is between private entities. Even in the context of oil and gas rights involving OCC orders, "long-standing Oklahoma law recogniz[es] district court jurisdiction to provide a remedy for damages based on common law theories of recovery, such as private nuisance and negligence." *NBI Services, Inc. v. Ward,* 2006 OK CIV APP 20, ¶ 19, 132 P.3d 619, 626. *Cf. Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 70, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)(observing that at a minimum, to be deemed a public rights dispute and, therefore, capable of being removed from Art. III courts and delegated to legislative courts or administrative agencies, a case must arise between the government and others, and that private rights disputes lie at the core of the historically recognized judicial power). As in *NBI Services, Inc.,* Crawley's argument, in its "Motion to Dismiss for Lack of Subject Matter Jurisdiction,"

confuses the statutory grant of exclusive jurisdiction to the OCC to *regulate* oil and gas exploration and production activities in Oklahoma, with the jurisdiction [of the district courts] to *afford a remedy* to those whose common law rights have been infringed by either the violation of those regulations or otherwise.

*Id.* at ¶ 21, 132 P.3d at 626. We find that the trial court has subject matter jurisdiction over this case to afford a remedy for the alleged infringement of the GrayHorse group's common law rights. Therefore, we remand for further proceedings.

### CONCLUSION

¶ 22 Based on our review of the record and applicable law, we reverse the trial court's grant of Crawley's motion to dismiss for lack of subject matter jurisdiction and we remand this case for further proceedings. As stated above, we express no view whatsoever upon the merits of any element of the GrayHorse group's claims.[23]

¶ 23 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

WISEMAN, C.J., and FISCHER, P.J., concur.

---

**23.** In addition, it is not the duty of the appellate court on review to make first-instance determinations of disputed law or fact issues. *Evers v. FSF Overlake Associates,* 2003 OK 53, ¶ 18, 77 P.3d 581, 587. An appellate court cannot craft an initial decision upon an untried question and then direct that it be followed on remand. *Id.* Fact and law issues regarding the GrayHorse group's claims were not considered by the trial court below. Instead, the trial court's order, at Finding of Fact no. 10, p. 2, merely states that

"Plaintiff in this case alleges Defendant converted the casing, pipe and wellbore of the Russell State # 2–36 well to its own use in recompletion of the well in the Third Deese (Gibson Sand) formation, causing damage to the Plaintiffs." Moreover, as quoted above, "[t]he purpose of a motion to dismiss is to test the law that governs the claim in litigation rather than to examine the underlying facts of that claim." *Rogers v. Quiktrip Corp.,* 2010 OK 3, ¶ 4, 230 P.3d 853, 856 (footnote omitted).