2017 OK CIV APP 55

**Cariol FORD, Plaintiff/Appellant,**

**v.**

**TULSA PUBLIC SCHOOLS, Defendant/Appellee.**

**Case Number: 115575**

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 07/27/2017

Mandate Issued: 08/22/2017

Pamla K. Cornett, FLYNN LAW FIRM PLLC, Tulsa, Oklahoma, for Plaintiff/Appellant.

Eric D. Wade, ROSENSTEIN, FIST & RINGOLD, Tulsa, Oklahoma, for Defendant/Appellee.

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Cariol Ford filed this tort action against Tulsa Public Schools (TPS) alleging she was involved in an automobile accident with a bus owned by TPS. She alleges the bus was being driven negligently by an agent or employee of TPS and that the bus driver's negligent driving caused her to incur, inter alia, medical expenses and pain and suffering.

¶2 TPS filed a motion to dismiss, asserting Ford failed to comply with one or more provisions of the Governmental Tort Claims Act (GTCA), 51 O.S. 2011 & Supp. 2012

§§ 151-172, thereby extinguishing the court's subject matter jurisdiction over this action. Ford appeals from the trial court's order granting the motion to dismiss. She also appeals from the trial court's denial of her "Motion to Reconsider" that order.

¶3 Based on our review, we conclude an issue of fact exists as to whether Ford has satisfied the requirement under the GTCA that her claim be "filed with the office of the clerk of the governing body." 51 O.S. Supp. 2012 § 156(D). Although Ford admits her claim was not specifically addressed to the office of the appropriate clerk, she has presented facts and allegations, set forth in more detail below, that it was nevertheless transmitted to and filed with the office of that clerk. TPS has presented an affidavit in conflict with Ford's evidentiary materials and assertions. Thus, we remand this case to the trial court for purposes of holding an evidentiary hearing to resolve this issue of fact.

¶4 TPS also asserts the trial court lacks jurisdiction over this action because Ford failed to file her petition in the district court within 180 days of the claim being denied by TPS. As pointed out by Ford in her motion to reconsider, this basis for dismissal was set forth for the first time in TPS's reply to Ford's response to the motion to dismiss, and Ford was, thus, unable to respond to this basis for dismissal in her response to the motion to dismiss. Ford also asserts that the 180-day time limit may be extended under certain circumstances, circumstances which she asserts are present in this case. We conclude this issue should also be addressed by the trial court at the evidentiary hearing, where both parties can present argument and evidence in support of their positions.

## STANDARD OF REVIEW AND PRELIMINARY ISSUES

¶5 Both parties have included evidentiary materials beyond the pleadings—TPS has attached an affidavit to its motion to dismiss, and Ford has attached various evidentiary materials to her response to the motion to dismiss. TPS notes that because it

is moving for dismissal for lack of subject matter jurisdiction, "the court may view matters outside the pleadings without converting the motion to one for summary judgment." We agree.

¶6 In general, under 12 O.S. 2011 § 2012(B),

the procedure [for] converting a motion to dismiss into a motion for summary judgment when matters outside the pleadings are presented applies only to motions to dismiss for failure to state a claim upon which relief can be granted, but does not apply to motions to dismiss for lack of subject matter jurisdiction[.]

*Grayhorse Energy, LLC v. Crawley Petroleum Corp.*, 2010 OK CIV APP 145, ¶6 n.10, 245 P.3d 1249 (citations omitted). "This Court has held that a trial court may review evidentiary material attached to a motion to dismiss, without converting the motion to one for summary judgment, if the motion challenges the court's jurisdiction." *Kennedy v. City of Talihina*, 2011 OK CIV APP 108, ¶4, 265 P.3d 757 (citation omitted).[1]

¶7 In TPS's motion to dismiss, it challenges the court's jurisdiction. TPS asserts that Ford has failed to comply with one or more provisions of the GTCA and that this failure has extinguished the court's subject matter jurisdiction over the action. Indeed, the Oklahoma Supreme Court has explained that

the Legislature consented to judicial enforcement of tort claims in the manner narrowly structured by the procedural requirements of §§ 156 and 157. [This Court has previously] determined that: 1) compliance with the written notice of claim and denial of claim provisions in §§ 156 and 157 are prerequisites to the state's consent to be sued and to the exercise of judicial power to remedy the alleged tortious wrong by the government; 2) judicial power is invoked by the timely filing of the governmental tort claims action pursuant to § 157; and, 3) expiration of the 180-day time period in § 157(B) operates to bar

---

1. An exception may exist "where the jurisdictional question is 'intertwined' with the merits of the case," *Visteon Corp. v. Yazel*, 2004 OK CIV APP 52, ¶17, 91 P.3d 690, but that is not the case here.

judicial enforcement of the claim against the government to which the Legislature waived sovereign immunity.

*Shanbour v. Hollingsworth*, 1996 OK 67, ¶ 7, 918 P.2d 73.[2]

■■■ ¶ 8 Because TPS challenges the court's jurisdiction, the trial court properly refrained from converting the motion to dismiss into one for summary judgment. Thus, we will treat TPS's motion as a motion to dismiss and we will also review the evidentiary material attached by the parties. "This Court subjects a trial court's judgment dismissing a petition to *de novo* review." *Wilson v. State ex rel. State Election Bd.*, 2012 OK 2, ¶ 4, 270 P.3d 155 (citation omitted). "Motions to dismiss are generally disfavored and granted only when there are no facts consistent with the allegations under any cognizable legal theory or there are insufficient facts under a cognizable legal theory." *Id.* (citation omitted).

■■■ ¶ 9 This case is made somewhat more procedurally complex (1) by the fact that TPS was granted permission to file a reply brief and, according to Ford, raised a new basis for dismissal in that reply, and (2) by the fact that Ford filed a "Motion to Reconsider" the trial court's order granting the motion to dismiss, which the trial court denied. As to Ford's motion to reconsider, the Oklahoma Supreme Court has stated numerous times that "[a] 'motion to reconsider' does not technically exist within the statutory nomenclature of Oklahoma practice and procedure." *Smith v. City of Stillwater*, 2014 OK 42, ¶ 10, 328 P.3d 1192 (citations omitted). However, if timely filed, a "motion to reconsider" may be treated as a motion for new trial under 12 O.S. § 651 (if filed within ten (10) days of the filing of the

judgment, decree, or appealable order), or it may be treated as a motion to modify or to vacate a final order or judgment under the terms of 12 O.S. §§ 1031 and 1031.1 (if filed after ten (10) days but within thirty (30) days of the filing of the judgment, decree, or appealable order).

*Smith*, ¶ 10 (citations omitted). Ford's motion to reconsider was filed within ten days of the order, yet she expressly filed it "pursuant to 12 O.S. §§ 1031 and 1031.1[.]" Because Ford's motion was filed within ten days, we will treat her motion to reconsider as a motion for new trial for purposes of tolling the time to appeal the underlying order. *See Schepp v. Hess*, 1989 OK 28, ¶ 1 n.2, 770 P.2d 34 ("Although a 'motion to reconsider' filed within ten days of a judgment *may also* be considered as a timely new-trial motion that tolls the time to appeal, when such motion is filed *after* the ten-day period but within thirty days following the decision, *it will not operate to extend the time to appeal from that decision.*") (citations omitted) (emphasis in original).

■■■ ¶ 10 "Absent some pure error of law, the trial court's ruling on a motion to reconsider will not be disturbed unless affected by an abuse of discretion." *Waldrop v. Hennessey Utilities Auth.*, 2014 OK CIV APP 106, ¶ 7, 348 P.3d 213 (citation omitted). However, in this case, the propriety of the trial court's denial of the motion to reconsider rests on the underlying correctness of its decision to dismiss. The abuse of discretion question is therefore settled by our de novo review of the dismissal's correctness. *Pellebon v. State ex rel. Bd. of Regents of Univ. of Okla.*, 2015 OK CIV APP 70, ¶ 13, 358 P.3d 288. "The same standard of review applies with respect to the construction of statutes

---

2. As explained by the Oklahoma Supreme Court in a case cited by *Shanbour*:

The [GTCA] adopted the common law doctrine of sovereign immunity and then partially waived the immunity.... The doctrine of sovereign immunity embodied the "concept that the courts were a part of government and could not be used to enforce claims against the government without the express permission of the government." The [GTCA] expressly withholds consent to judicial enforcement of tort claims against the government, state or local, and then expressly consents to judicial enforce-

ment of tort claims "to the extent and in the manner provided." The extent to which a tort claim may be judicially enforced against the government is prescribed in various sections [of the GTCA] .... The manner in which a party may overcome sovereign immunity and maintain an action against the government is narrowly structured by the procedural prerequisites in §§ 156 and 157.

*Cruse v. Bd. of Cnty. Comm'rs of Atoka Cnty.*, 1995 OK 143, ¶¶ 10-11, 910 P.2d 998 (footnotes omitted).

necessary to determine the legal sufficiency of the petition." *Kennedy*, 2011 OK CIV APP 108, ¶ 4, 265 P.3d 757 (citation omitted).[3]

## ANALYSIS

¶ 11 In TPS's motion to dismiss, it asserts Ford has failed to comply with one of the notice provisions of the GTCA. In particular, TPS points out that before a lawsuit may be initiated against a political subdivision such as a school district, written notice must be filed with the office of the clerk of that governing body. 51 O.S. Supp. 2012 § 156(D) ("A claim against a political subdivision shall be in writing and filed with the office of the clerk of the governing body.").

¶ 12 In response, Ford states she "acknowledges her claim is governed by the provisions of the [GTCA]," and she "further acknowledges that failure to comply with the Notice Provision of [§ 156] shall bar a claim." She also admits that the notice she sent "was not addressed to the clerk of the governing body," and was instead "sent to the Tulsa Public Schools[.]" However, Ford asserts that because her notice letter was "clearly marked as a Notice of Claim and properly informed the school district of the relevant aspects of [Ford's] claim," that TPS was not prejudiced and was not prevented from investigating the claim. Ford asserts "any deficiency of the Notice itself is a technicality at best" because Ford's counsel "was in regular contact with Bob Collier, Senior Claims adjustor for the third party administrator who handled the claims for [TPS]." Evidentiary materials attached to Ford's response support her assertions and further indicate the claim was "reported to [the third party administrator] for handling," received a claim number, and was being processed.

¶ 13 Ford cites to *Mansell v. City of Lawton*, 1995 OK 81, 901 P.2d 826, where the Oklahoma Supreme Court stated: "This Court has consistently held substantial compliance with the notice provisions of the [GTCA] is sufficient when the political subdivision is not prejudiced, and the provided information satisfies the purposes of the stat-

utory notice requirement." *Id.* ¶ 9 (footnote omitted). Ford also cites to *Conway v. Ohio Casualty Insurance Company*, 1983 OK 83, 669 P.2d 766, where the Supreme Court explained that the

purpose of the notice requirement must be kept in mind in order to prevent a construction which would defeat the ends of justice. The purposes of the notice requirement are to further legitimate interests by promoting prompt investigation; by providing the opportunity to repair any dangerous condition and for speedy and amicable settlement of meritorious claims; and to allow the opportunity to prepare to meet possible fiscal liabilities. We find here that none of these interests were prejudiced by the mode of imparting notice of the claim and hold that although the notice given did not conform to the authorized procedures under the [Political Subdivision Torts Claims Act, 51 O.S. 1981 § 151 *et seq.*], it was sufficient to establish substantial compliance.

*Conway*, ¶ 7.

¶ 14 TPS asserts that both *Mansell* and *Conway* have been superseded by statute as explained by the Oklahoma Supreme Court in *Minie v. Hudson*, 1997 OK 26, 934 P.2d 1082. The issue confronted by the *Minie* Court was whether verbal communication may be sufficient under the GTCA. The *Minie* Court explained that in a prior Opinion—*Duesterhaus v. City of Edmond*, 1981 OK 107, 634 P.2d 720—interpreting an earlier version of § 156, the Supreme Court "specifically held that written notice was not mandatory to satisfy the notice provisions[.]" *Minie*, ¶ 6 (citing *Duesterhaus*). The *Minie* Court explained that the pertinent language had been subsequently amended; indeed, the language confronted by the *Minie* Court is the same language applicable to the present case: "A claim against a political subdivision shall be in writing and filed with the office of the clerk of the governing body." The *Minie* Court stated:

---

**3.** We will address further below Ford's contentions relating to TPS's filing of a reply to Ford's

response to the motion to dismiss.

It is presumed that the Legislature has expressed its intent in a statute and that it intended what it so expressed. The determination of legislative intent controls judicial statutory interpretation; however, it is unnecessary to apply rules of construction to discern legislative intent if the will is clearly expressed.

The statutory language leaves no doubt that the Legislature intended that claims against a political subdivision be submitted in writing. The statute specifically provides that a claim "shall be in writing." The use of "shall" by the Legislature is normally considered as a legislative mandate equivalent to the term "must," requiring interpretation as a command. Further, when the Legislature amends a statute whose meaning has been settled by case law, it has expressed its intent to alter the law. Before the Legislature amended § 156(D), its effect had been judicially determined in *Duesterhaus* holding that a written claim was unnecessary to substantially comply with the notice provisions of the Tort Claims Act. The Legislative intent to change the law is expressed in the amendment to § 156(D). We find that pursuant to the clear mandatory language of [§ 156(D)], only a written claim is sufficient to invoke the protections of the [GTCA]. [Therefore, the] verbal communication ... does not substantially comply with this requirement.

*Minie*, ¶¶ 7-8 (footnotes omitted).

■■■ ¶ 15 We agree with TPS that this same reasoning applies to this case and requires that a claim "shall be ... filed with the office of the clerk of the governing body." § 156(D). As explained by the *Minie* Court, the word "shall" in this instance means "must," "requiring interpretation as a command." *Minie*, ¶ 8. Thus, "pursuant to the clear mandatory language of [§ 156(D)]," *Minie*, ¶ 8, only a claim "filed with the office of the clerk of the governing body," § 156(D), is sufficient to invoke the protections of the GTCA.

■■■ ¶ 16 However, this does not mean that Ford has failed to comply with § 156(D). Although Ford admits that the notice of her claim "was not addressed to the clerk of the governing body," she asserts her letter was timely "sent to the Tulsa Public Schools" and was entitled: "**NOTICE OF CLAIM PURSUANT TO THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT.**" As stated above, evidentiary materials attached to Ford's response support her assertions and further indicate the claim was "reported to [the third party administrator] for handling," received a claim number, and was being processed. Importantly, § 156(D) does not require that a claim be specifically addressed to the office of the clerk of the governing body, however prudent that might be. All that § 156 requires in this regard is that it be "filed with" the appropriate clerk. "Under our case law, we hesitate to construe any statute that appears clear and unambiguous. Only when the circumstances make it unmistakable that there has been a legislative oversight will the Court intervene to clarify statutory enactments." *Cox v. Dawson*, 1996 OK 11, ¶ 6, 911 P.2d 272. This Court "may not read an exception into a statute not made by the Legislature," *Oglesby v. Liberty Mut. Ins. Co.*, 1992 OK 61, ¶ 13, 832 P.2d 834 (footnote omitted); that is, "[t]his Court does not read exceptions into a statute *nor may we impose requirements not mandated by the Legislature*," *Cox v. State ex rel. Okla. Dep't of Human Servs.*, 2004 OK 17, ¶ 26, 87 P.3d 607 (emphasis added) (footnotes omitted).

¶ 17 Section 156(D) requires that a claim shall be filed with the office of the clerk of the governing body. Ford is clearly alleging that, although her notice was not specifically addressed to the clerk of the governing body, it was nevertheless transmitted to and filed with the office of that clerk following delivery—not a surprising outcome given the title and contents of her letter mailed to TPS—and she has supported this allegation with various evidentiary materials attached to her response. In *Duncan v. City of Stroud*, 2015 OK CIV APP 28, 346 P.3d 446, the plaintiff contended his injuries were caused by the negligence of a city employee. The plaintiff's counsel sent a letter to the city's insurance company, and the city later argued that this letter, rather than the notice mailed several months later to the city clerk, constituted the

written notice under § 156 for purposes of determining the cut-off date for the filing of the petition in district court. The *Duncan* Court disagreed, explaining that, among other things, the earlier letter was

.a letter from [the plaintiff's] counsel to what appears to be an insurance agency representing the City. There is no evidence in this record proving that ... [the insurance company] was authorized to receive notice of tort claims against the City or that [the insurance company] transmitted the April 6 letter to the City's Clerk.

2015 OK CIV APP 28, ¶ 16, 346 P.3d 446. The *Duncan* Court further explained that the

letter does not meet the statutory definition of a "claim" for purposes of the GTCA. A claim is defined as:

[A]ny **written demand** presented by a claimant or the claimant's authorized representative in accordance with this act **to recover money** from the state or political subdivision as compensation for an act or omission of a political subdivision or the state or an employee.

51 O.S. 2011 § 152(4) (emphasis added). The only "demand" in the ... letter is for a copy of the City's insurance policy. "The GTCA precludes any tort action against a political subdivision unless the plaintiff has provided notice and given the political subdivision the opportunity to accept or deny the claim."

*Duncan*, ¶ 14 (citation omitted).

¶ 18 In the present case, by contrast, the letter sent by Ford to TPS does appear to meet the statutory definition of a claim for purposes of the GTCA. In addition to the title of the letter, set forth above, the letter states, among other things, that it is intended as "notice of my client's claims against Tulsa Public School District," it sets forth Ford's name, her address, the date of the alleged accident, the alleged cause of the accident, the location of the accident, and that Ford's damages are "in excess of $10,000." Furthermore, Ford has presented evidence from which a reasonable inference can be drawn

that the letter was "transmitted" to the appropriate clerk and filed. *Cf. Duncan*, ¶ 16.

¶ 19 Nevertheless, TPS has attached an affidavit of Cindy Hutchings, who asserts she is "the Clerk of the Board of Education of Independent School District No. 1 of Tulsa County," and asserts: "I have conducted a thorough review of written tort claims notices received by the Tulsa School District and can and do state that the Tulsa School District has never received a written tort claim notice from [Ford]." Thus, the parties' evidentiary materials are in conflict, and an issue of fact exists as to whether Ford has satisfied the requirement under § 156(D) that her claim be filed with the office of the clerk of the governing body. The Supreme Court has explained that

a motion may raise an issue of fact pursuant to Rule 4(c) of the Rules for District Courts. In *Mott v. Carlson*, 1990 OK 10, 786 P.2d 1247, we observed that "Motions raising fact issues shall be verified by a person having knowledge of the facts, if possible; otherwise, a verified statement of counsel of what the proof will show will suffice until a hearing or stipulation can be provided." We explained more recently that "The scope of Rule 4 includes motions not involving the merits of the action; and facts material to such motions, when contested, must be tried by the appropriate trier of fact."

*Powers v. Dist. Ct. of Tulsa Cnty.*, 2009 OK 91, ¶ 8, 227 P.3d 1060 (citations omitted). We remand this case to the trial court for purposes of holding an evidentiary hearing to resolve this issue of fact.

¶ 20 In TPS's reply to Ford's response to the motion to dismiss, TPS sets forth an alternative basis for dismissing this case. TPS asserts in its reply that even assuming *arguendo* that Ford did satisfy § 156(D), Ford failed to file her petition in the district court within 180 days of the claim being denied by TPS.[4] The GTCA provides, in pertinent part, as follows:

4. That is, within 90 days of being deemed denied. "A claim is deemed denied if the state or political subdivision fails to approve the claim in its en-

tirety within ninety (90) days...." 51 O.S. 2011 § 157(A).

No action for any cause arising under this act, Section 151 et seq. of this title, shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section. 51 O.S. 2011 § 157(B). It is not clear whether the trial court relied upon this alternative basis in granting the motion to dismiss. The order merely states: "the Motion [to Dismiss] should be granted for the reasons set forth in the Motion and [in TPS's] supporting briefs."

¶ 21 Rule CV 18 of the Rules of the District Court of Tulsa County states, in pertinent part, that "[r]eply briefs are permitted only by leave of Court by application stating the reason for filing a reply brief. ... No reply brief may exceed five (5) pages in length. ..." In its application to file a reply brief, TPS stated that Ford's response "includes matters that [TPS] wishes to address in a reply brief, which [TPS] believes will assist the court in its determination of the Motion." Ford did not object to TPS's application. However, Ford was not notified that TPS would be raising a new basis for dismissal. Therefore, Ford was unable to respond to this basis for dismissal.

¶ 22 Moreover, Ford points out in her motion to reconsider that § 157(B) further states: "The claimant and the state or political subdivision may agree in writing to extend the time to commence an action for the purpose of continuing to attempt settlement of the claim except no such extension shall be for longer than two (2) years from the date of the loss." Ford asserts that her evidentiary materials show that "Bob Collier was handling the claim for TPS. [A] letter from Mr. Collier ... indicates he ... received the settlement demand. This implies that such demand and specials were requested." Ford states that "[t]hroughout the correspondence of the parties, there are promises that settlement authority is forthcoming," and she asserts that the filing of her petition was within the statutory limit set forth under § 157. *See also Carswell v. Okla. State Univ.*, 1999 OK 102, ¶ 13, 995 P.2d 1118; *Duncan v. City of Stroud*, 2015 OK CIV APP 28, ¶ 16, 346 P.3d 446 ("[W]e cannot permit the senior claims manager's promise 'to be in touch in the near future' to 'lull' [the plaintiff], whether intentionally or unintentionally, 'into a false sense of security concerning the applicable denial date under ... [§ ] 157 and then rely on the induced delay as a defense to an action.' ") (quoting *Carswell*). We conclude this issue should also be addressed by the trial court at the evidentiary hearing, where both parties can present argument and evidence in support of their positions.

## CONCLUSION

¶ 23 We conclude the trial court erred in granting the motion to dismiss and, thus, abused its discretion in denying the motion to reconsider. We reverse and remand this case to the trial court to hold an evidentiary hearing to resolve the issues of fact discussed herein.

¶ 24 **REVERSED AND REMANDED WITH INSTRUCTIONS.**

THORNBRUGH, V.C.J., and WISEMAN, J., concur.